## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NEVILLE SYLVESTER LESLIE,** | : | **CIVIL NO. 3:11-CV-249** |
| | : | |
| **Petitioner,** | : | **(Judge Conaboy)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ERIC HOLDER, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## MEMORANDUM  OPINION

### I.    Factual Background and Procedural History

#### A.    Factual and Procedural Background

This case involves a habeas corpus petition filed by an immigration detainee, Neville Sylvester Leslie.  This matter now comes before this Court after years of litigation on a remand from the United States Court of Appeals for the Third Circuit for the purpose of a bail determination for Leslie.  Thus, in this case we do not write upon a blank slate.  Quite the contrary, the prior legal proceedings in this matter largely shape and define the scope of the current hearing.  That procedural history, which has been marked by prolonged detention of the petitioner, was aptly described by the court of appeals in the following terms:

> In 1998, Neville Leslie, a native and citizen of Jamaica and a lawful permanent resident of the United States, was convicted of a felony

offense of conspiracy to possess and distribute more than fifty grams of "crack" cocaine in violation of 21 U.S.C. § 846. He was subsequently sentenced to 168 months imprisonment, which he has served. On March 28, 2008, after Leslie's release from prison, ICE issued a warrant for Leslie's arrest and took Leslie into custody. He has been incarcerated under ICE custody since that time.

On April 16, 2008, an Immigration Judge ("IJ") held a hearing and found Leslie, who waived his right to counsel at the hearing, removable to Jamaica for having committed an aggravated felony. Leslie appealed that order to the Board of Immigration Appeals ("BIA"). His appeal was dismissed on July 11, 2008. On July 21, 2008, Leslie petitioned this court for review of the BIA's decision, and he also moved to stay his removal on July 24, 2008. On August 14, 2008, this court granted the stay of removal pending the resolution of his petition for review.

On July 8, 2010, this court, holding that the IJ failed to inform Leslie of the availability of free legal counsel, granted Leslie's petition for review and remanded the case to the BIA for a new hearing. On December 10, 2010, the BIA remanded the case to the IJ, who scheduled a hearing for February 22, 2011.

While still engaged before the immigration authorities and while still awaiting the immigration hearing of February 22, 2011, on February 2, 2011, Leslie filed a petition for a writ of habeas corpus in the District Court for the Middle District of Pennsylvania, challenging his continued immigration detention without hearing.

First, Leslie claimed that his original conviction was not an "aggravated felony," and that he therefore was not subject to criminal detention under 8 U.S.C. § 1226. Section 1226 concerns the arrest, detention, and release of aliens who have not yet been ordered to be removed, and, among other things, authorizes a bond hearing. Leslie also argued that his detention was unconstitutionally lengthy and that his continued detention without a bond hearing violated his procedural due process rights under the Fifth Amendment.

Before Leslie's habeas corpus petition was ruled on by the District Court, the IJ held the scheduled February 22, 2011 hearing, where Leslie requested a continuance of his removal proceedings for "medical reasons." The IJ continued the proceedings until March 30, 2011, at which time another hearing was held. At that hearing, Leslie again

challenged the constitutionality of 8 U.S.C. § 1226 and again argued that his prior conviction was not an "aggravated felony." The IJ concluded that the prior conviction *was* an aggravated felony and did not decide the constitutional question of unreasonable detention. The IJ therefore ordered that Leslie be removed to Jamaica. Leslie appealed this decision to the BIA.

The BIA remanded Leslie's appeal of the IJ's order of removal to the IJ, noting that the audio recording of the March 30, 2011 hearing and the audio recording of the immigration judge's oral decision were missing from the record. The BIA therefore ordered the immigration judge to prepare a complete transcript of the March 30, 2011 proceedings and, if necessary, to hold a new hearing.

Meanwhile, on May 10, 2011, the District Court adopted a magistrate judge's report and recommendation which recommended denying Leslie's petition for a writ of habeas corpus "without prejudice to future requests when, and if, Leslie's continued detention becomes sufficiently prolonged to trigger constitutional concerns." The District Court then held that Leslie had been convicted of an aggravated felony and that his detention[1] was not unreasonable.

Leslie v. Attorney General, 11-2442, 2012 WL 898614, *1-2 (3d Cir. March 19, 2012).

Leslie timely appealed this May 2011 decision conditionally denying him habeas relief, and eleven months later, on March 19, 2012, the court of appeals entered an opinion and order which concluded that the on-going delay in this matter had now

---

[1]The court of appeals throughout its opinion has correctly characterized Leslie's confinement as detention, although it appears from the government's presentation at the March 28 bail hearing before this Court that the precise expedient by which Leslie has been detained for the past four years has been through the agency setting a financially unattainable cash bail for the petitioner. The court of appeals, quite properly, has equated this action with detention, and has treated the imposition of a bail which the agency knows cannot be met as tantamount to detention.

become excessive and warranted some habeas corpus relief in the form of bail consideration for Leslie. The appellate court's guidance in this regard was unmistakably clear, with the court stating in clear and precise terms that: "We therefore hold that Leslie's detention is unreasonably long, and he is therefore entitled to 'an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.' Diop, 656 F.3d at 231." Id., 2012 WL 898614 at *5.

The appellate court's reference to its recent prior decision in Diop further informed the bail review process contemplated by this remand ruling. As the court explained: "Diop laid out a two step-process: a reviewing court must first determine that a detention has been unreasonably long, and following such a determination, must determine whether the unreasonable detention is necessary to fulfill § 1226's purposes as outlined in Diop, supra." Leslie v. Attorney General, 2012 WL 898614 at *3. In this case the appellate court's explicit finding that "Leslie's detention is unreasonably long" plainly addressed the first question set forth in the analytical paradigm defined by Diop. Therefore, our task is to conduct the second step of this two-step analysis and engage in "an individualized inquiry into whether detention is still necessary to

fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." <u>Diop</u>, 656 F.3d at 231.

The opinion and mandate of the court of appeals also prescribed when and how this process should occur, stating that: "Leslie's appeal will be remanded to the District Court with instructions to conduct an individualized bond hearing as required by <u>Diop</u> within ten days of the date when this opinion and order are filed."<u>Leslie v. Attorney General</u>, 2012 WL 898614 at *5.

## B.   Proceedings Following Remand from the Court of Appeals

Like the underlying immigration proceedings in this case, the proceedings before this Court following this remand by the court of appeals have been marked by invitations to follow legal detours.  Thus, immediately upon the issuance of the court of appeals mandate, the District Court directed the undersigned to conduct the bail hearing ordered by the appellate court.  (Doc. 22)  We, in turn, appointed counsel for Leslie, and scheduled a hearing within the 10-day time frame dictated by the court of appeals. (Doc. 23)

The respondents immediately objected to judicial review of Leslie's four-year detention, and requested instead that an Immigration Judge be first given the opportunity to conduct a bail review for Leslie which would, according to the respondents would comply with the dictates of Diop, and the express mandate of the

court of appeals in this case.  (Doc. 27)  Mindful of the deference which should be accorded in the first instance to agency decision-making processes, the District Court agreed to this request, and permitted the respondents have a bail review initially conducted by an Immigration Judge.  (Doc. 28)

Having sought leave of court for the express purpose of permitting an IJ to conduct a bail hearing which would comply with the mandate of the court of appeals, the respondents then held a proceeding on March 23, 2012, which failed to comport with that appellate court mandate in several material respects.  (Doc. 29) First, despite the court of appeals' express direction that this hearing must "determine whether the unreasonable detention is necessary to fulfill § 1226's purposes as outlined in Diop, supra." Leslie v. Attorney General, 2012 WL 898614 at *3, the respondents ignored Diop's guidance that the government bore the burden of proof at this hearing, and instead apparently assigned the burden of proof to Leslie in accordance with their own agency rules.[2]  Having apparently mis-allocated the burden of proof in this fashion, the respondents then conducted an administrative hearing which appears to have neglected to fully address crucial procedural safeguards that are implicit in Diop and in the court

---

[2]Indeed, at the March 28 hearing before this Court, respondents also invited us to ignore Diop's explicit admonition that the burden of proof justifying continued detention rests with the government, effectively urging us to find that the agency internal rules in this regard trump the judgment of the court of appeals. For the reasons set forth in this opinion, we decline this invitation.

of appeals' mandate, which in our view clearly contemplated meaningful participation by counsel in this bail hearing, as well as a full opportunity to present evidence. Instead, due to the hurried nature of the agency proceeding, counsel merely participated by telephone, and it seems that Leslie did not have a complete opportunity to present evidence in support of his request for bail.  Furthermore, immigration officials then took steps which frustrated any effort to conduct meaningful judicial review of this agency determination, since the respondents have refused to provide petitioner's habeas counsel which any transcript or record of these proceedings.  This agency determination that the parties in this habeas proceeding could not see what transpired at the IJ bail hearing effectively precluded any meaningful review of this March 23 administrative hearing, and undermines confidence in the outcome of that proceeding.[3]

In addition, the March 23, IJ opinion itself was notable in several respects. Despite the court of appeals' explicit instruction that:  "Leslie's appeal will be remanded to the District Court with instructions to conduct *an individualized bond*

---

[3] In making this observation, the Court does not suggest that the purpose of conducting the bail hearing on March 28 was to subject the IJ's bail determination to judicial or appellate review by this Court.  Instead, we provide this recitation of the process employed by the agency and the IJ because it substantially undermines the respondents' argument that this Court should conclude that the bail hearings before the IJ satisfied the court of appeals' remand order.  As we explain, we find that the proceedings before the IJ plainly did not satisfy, or even substantially address, the court of appeals concerns.

*hearing as required by* <u>*Diop*</u> within ten days of the date when this opinion and order are filed," <u>Leslie v. Attorney General</u>, 2012 WL 898614 at *5, (emphasis added), the IJ adopted an approach to this issue which imposed categorical barriers to release without any individualized consideration of Leslie's personal circumstances, announcing in part that "[Leslie's] ability to pay is not a factor in determining whether to reduce the bond." (Doc. 29)  Having set this absolute bar to release based upon Leslie's economic status, the IJ went on, though, to find that Leslie " is not a danger to the community.  He has learned his lesson and served considerable time in prison." (<u>Id.</u>)  Instead, the IJ refused to modify Leslie's bail after finding that Leslie "does pose some degree of risk of flight."  However, in this regard the IJ finding was internally inconsistent, since the IJ supported this risk of flight assessment by evidence which traditionally is relied upon to rebut a risk of flight, citing Leslie's "extensive family ties in this country" as a factor which suggested that he would flee. (<u>Id.</u>)

Given the profoundly flawed nature of this administrative hearing process, the petitioner renewed his request for the type of hearing expressly ordered by the court of appeals: a hearing before the District Court with instructions to conduct an individualized bond hearing as required by <u>Diop</u>.  (Doc. 30)  The District Court granted this request and on March 26, 2012, referred this matter to the undersigned. (Doc. 32)  Respondents then once again sought to avoid judicial consideration of this

matter by filing a second emergency motion for reconsideration which asked that no independent judicial review be conducted here.  (Doc. 34)  That motion was denied by the District Court on March 27, 2012, (Doc. 36), and on March 28, 2012–approximately 1,451 days after he first came into immigration custody – Leslie received an individualized bail consideration by this Court consistent with the opinion and mandate of the court of appeals.

## II.    Discussion

### A.    This Court May Conduct a Bail Hearing in a Habeas Corpus Proceeding Under Its Habeas Corpus Jurisdiction

In connection with this expedited habeas corpus bail hearing, the parties have submitted contrasting views regarding a threshold legal issue; namely, whether this Court can independently entertain a bail hearing in this pending habeas corpus proceeding.  On this threshold question, the parties advocate dramatically different courses.  The petitioner contends that such hearings, incident to the court's habeas corpus jurisdiction, are authorized by law, are contemplated by the court of appeals' mandate, and have often been conducted by the federal courts in the past.  In contrast, the United States argues that this Court may not conduct bail proceedings in this federal habeas corpus matter, but rather must and should defer to the decision of the Immigration Judge, whose bail determination may only be reviewed through an appeal to the BIA.

On this threshold jurisdictional question we agree with the petitioner that we are empowered to conduct bail proceedings in habeas corpus proceedings brought by immigration detainees.  Indeed, the authority to conduct such hearing has long been recognized  as an essential ancillary aspect of our federal habeas corpus jurisdiction.  In this regard, we note that, contrary to the respondents' suggestion, there is nothing extraordinary or novel about this practice of conducting bail hearings in connection with federal immigration habeas corpus proceedings.  Quite the contrary, this District Court has in a number of instances conducted this bail review in immigration habeas matters.  Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009)(two years detention, court schedules hearing to review case).  In still other instances, the remedy imposed by the court has been an order directing the outright release of the alien. See, e.g., Madrane v. Hogan, 520 F. Supp. 2d 654 (M.D. Pa. 2007); Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008); Nunez-Pimentel v. U.S. Dep't of Homeland Security, No. 07-1915, 2008 WL 2593806 (M.D. Pa. June 27, 2008.)

Here, the authority of this Court to conduct a bail hearing in a federal habeas corpus proceeding springs from several well-established legal sources.  First, in our view, this authority derives from the law of the case, as defined by the mandate of the court of appeals.  "Under the law of the case doctrine, once an issue is decided, it will

not be relitigated in the same case, except in unusual circumstances. . . . . The purpose

of this doctrine is to promote the 'judicial system's interest in finality and in efficient

administration. <u>Todd & Co., Inc. v. S.E.C.</u>, 637 F.2d 154, 156 (3d Cir. 1980).' "

<u>Hayman Cash Register Co. v. Sarokin</u>, 669 F.2d 162, 165 (3d Cir. 1981).   The

contours of this settled doctrine were recently described by the United States Court of

Appeals for the Third Circuit in the following terms:

> In  <u>Arizona v. California</u>, 460 U.S. 605 (1983), the Supreme Court
> noted:
>
>> Unlike the more precise requirements of res judicata, law of
>> the case is an amorphous concept. As most commonly
>> defined, the doctrine posits that when a court decides upon
>> a rule of law, that decision should continue to govern the
>> same issues in subsequent stages in the same case.
>
> <u>Id</u>. at 618 (citations omitted). The "[l]aw of the case rules have developed
> 'to maintain consistency and avoid reconsideration of matters once
> decided during the course of a single continuing lawsuit.'"

<u>In re Pharmacy Benefit Managers Antitrust Litigation</u>, 582 F.3d 432, 439 (3d

Cir.2009)(reversing  arbitration  order  in  antitrust  case  on  law-of-the-case

grounds)(citations omitted).  It is clear that "[t]he ... doctrine does not restrict a court's

power  but  rather  governs  its  exercise  of  discretion."  <u>Id</u>. <u>(</u>quoting Pub. Interest

<u>Research Group of N.J., Inc. v. Magnesium Elektron Inc.</u>, 123 F.3d 111, 116 (3d

Cir.1997)) (citations omitted).  In exercising that discretion, however, courts should

"be loathe to [reverse prior rulings] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." Id.( quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)).   In addition to that narrow class of cases where the prior ruling was manifestly unjust, the type of "extraordinary circumstances" that warrant a court's exercising its discretion in favor of reconsidering an issue decided earlier in the course of litigation typically exist only where (1) new evidence is available, or (2) a supervening new law has been announced. Id. (citing, Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997)).

Here, the law of the case, as defined by the mandate of the court of appeals is clear:  "Leslie's appeal will be remanded *to the District Court* with instructions to conduct an individualized bond hearing as required by Diop within ten days of the date when this opinion and order are filed." Leslie v. Attorney General, 2012 WL 898614 at *5 (emphasis added).  While respondents assert that the plain language of this mandate does not mean what it says, we find no ambiguity in that mandate and further find no reasons to depart from the clear order of the court of appeals, which directs that a bail hearing be conducted by this Court within 10 days of the mandate.

Indeed, there is no reason to depart from the law of the case because the court of appeals' direction in this case is entirely consistent with settled case law, which has

long recognized that the power to order bail in habeas proceedings is a legal and

logical concomitant of the court's habeas corpus jurisdiction.  In fact, our authority to

act in these matters has been long recognized, and carefully defined, by the courts

which have held generally in habeas corpus matters that the court may consider bail

motions and have prescribed legal standards for such relief, stating that:

> [C]ourts that have been faced with requests for bail prior to ruling on a
> habeas petition have developed standards requiring that a habeas
> petitioner (1) make out a clear case for habeas relief on the law and facts,
> or (2) establish that exceptional circumstances exist warranting special
> treatment, or both. See, e.g. Eaton v. Holbrook, 671 F.2d 670, 670 (1st
> Cir.1982); Iuteri v. Nardoza, 662 F.2d 159, 161 (2d Cir.1981); Calley v.
> Callaway, 496 F.2d 701, 702 (5th Cir.1974).

Lucas v. Hadden, 790 F.2d 365, 367 (3d Cir. 1986).

This settled principle, in turn, has been expressly extended to habeas corpus

petitions lodged by immigration detainees, Mapp v. Reno, 241 F.3d 221 (2d Cir.

2001), where the court of appeals correctly concluded that in extending this settled

tenet of habeas corpus jurisdiction to petitions by immigration detainees, "we are not

required to break new ground so much as to revisit a place where we have been

before." Mapp v. Reno, 241 F.3d at 225.  The Mapp court's analysis of this issue is

consistent with case law in this circuit, Lucas v. Hadden, 790 F.2d 365, 367 (3d Cir.

1986), is highly persuasive, and this Court has previously cited Mapp's analytical

paradigm with approval.  See Nasr v. Hogan, No. 08-415, 2008 WL 2705533 (M.D.

Pa. July 10, 2008).  Moreover, applying these settled principles, federal magistrate

judges have, in the past, conducted precisely the type of habeas petition bail hearing

contemplated by the court of appeals in this case.  See D'Allessandro v. Mukasey, No.

08-914, 2009 WL 799957 (W.D.N.Y. March 25, 2009).  Therefore, consistent with our

constitutional obligations in habeas corpus litigation we must decline the respondents'

invitation to declare ourselves powerless to act in this field.

### B.    The Parties' Burdens of Proof and Persuasion

Finding that we have the authority and responsibility to conduct this bail review,

we now turn to the controlling legal benchmarks which should guide us in making

these determinations in the specific legal context.

In our view this particular habeas corpus bail review entails a two-step process

marked by shifting burdens of proof and persuasion.  At the outset, we begin with the

recognition that, while this authority to conduct bail hearings in habeas petitions is

well-defined, it is also narrowly circumscribed.  As a general rule, "courts that have

been faced with requests for bail [in habeas proceedings] have developed standards

requiring that a habeas petitioner (1) make out a clear case for habeas relief on the law

and facts, or (2) establish that exceptional circumstances exist warranting special

treatment, or both." Lucas v. Hadden, 790 F.2d 365, 367 (3d Cir. 1986).  Therefore,

in the context of bail petitions by immigration detainees seeking relief in federal habeas corpus proceedings, "a court considering a habeas petitioner's fitness for bail must inquire into whether 'the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective.' Iuteri, 662 F.2d at 161;  see also Grune, 913 F.2d at 44." Mapp v. Reno, 241 F.3d 221, 230 (2d. Cir. 2001). With respect to this standard:

> When other district courts . . . have applied the[ese] standards . . . , "[a]n essential factor ... [has been] the necessity that the petition present merits that are more than slightly in petitioner's favor." Richard v. Abrams, 732 F.Supp. 24, 25 (S.D.N.Y.1990) (citing Rado v. Manson, 435 F.Supp. 349, 350-51 (D.Conn.1977) (holding that petitioner must be (1) "an exceptionally strong candidate for bail" and make (2) claims of a "substantial nature upon which [he] has a high probability of success"); Rado v. Meachum, 699 F.Supp. 25, 26-27 (D.Conn.1988) (holding that the relevant factors are whether (1) "substantial claims" are set forth in the petition; (2) there is a "demonstrated likelihood the petition will prevail"; and (3) there are "extraordinary circumstances" attending the petitioner's situation which would "require" the grant in order to make the writ of habeas corpus "effective," presumably if granted) (citing Stepney v. Lopes, 597 F.Supp. 11, 14 (D.Conn.1984)); accord Harris v. United States, 1997 WL 272398, at *1.

> D'Alessandro v. Mukasey, 2009 WL 799957 at *3.

Therefore, as a threshold matter, the petitioner bears the burden of showing that this case presents extraordinary circumstances warranting bail consideration.  In making this threshold determination we are cautioned to consider both the merits of the claims made in the petitioner's habeas corpus petition, and to ascertain whether the case

presents exceptional circumstances which make the petitioner a proper candidate for bail.   As part of this process, we also must assess whether "'extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective.'" Mapp v. Reno, 241 F.3d at 230.   These "extraordinary circumstances" may, in proper instances,  include medical considerations relating to the petitioner's health, and medical needs. D'Alessandro v. Mukasey, 2009 WL 799957 at *3.

Once we determine that the petitioner makes the threshold showing that extraordinary circumstances exist which justify the exercise of this Court's habeas corpus jurisdiction, the burden of proof then shifts to the respondents.  As the United States Court of Appeals for the Third Circuit has expressly found in this setting where we are considering the alleged unreasonable detention of an immigration detainee "when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." Diop v. ICE/Homeland Sec,. 656 F.3d 221, 233 (3d Cir. 2011).

At the March 28 hearing conducted by this Court, respondents invited us to ignore this explicit guidance, and instead follow the course adopted by the Immigration Judge and agency regulations and thrust this burden of proof upon Leslie.

This we cannot do.  Like the respondents, this Court is obliged to follow the law.  In this case the law is embodied in the ruling of the court of appeals in <u>Diop</u> which tells us unambiguously that "the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." <u>Diop v. ICE/Homeland Sec</u>,. 656 F.3d 221, 233 (3d Cir. 2011).

Moreover, the respondents' invitation to substitute agency regulations for the dictates of the court of appeals also fails because it fundamentally misconstrues the nature of this Court's responsibility.  We do not sit as an administrative agency review board, whose authority and discretion is narrowly cabined by agency regulations. Quite the contrary, our authority and responsibility in this matter springs from something more profound than the code of federal regulations.  Our responsibility is derived from a source which is as old as our nation, and deeply rooted in our Constitution, the guarantee of the writ of habeas corpus as a legal means to challenge what is alleged to be unlawful detention.  That writ compels the state to justify what is alleged to be the unlawful detention of a person, and we do not believe that the government can avoid its responsibilities in this regard by simply citing to their own internal regulations.  Therefore, we decline this invitation to thrust the burden of proof

on Leslie with respect to the lawfulness of this continued detention, which now spans 1,451 days.[4]

Having thus defined the nature of our authority and the scope of our review, we turn to the task at hand, "an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." Diop, 656 F.3d at 231.

### B.   Individualized Bail Analysis

In conducting this individualized bail analysis, we make the following findings and conclusions:

### 1.   The Respondents' Contentions

At the March 28, 2012, bail hearing the respondents proffered that the following individual factors, unique to the petitioner, which they assert indicate that Leslie presents a continuing risk of flight or danger to the community if released on bail:

---

[4]Respondents' invitation to transpose the burden of proof imposed in federal criminal cases upon a select class of criminal defendants under the Bail Reform Act, 18 U.S.C.§ 3142, to Leslie is also unavailing. This invitation fails for several reasons. First, it ignores the appellate court's explicit instruction in Diop. Second, it fails to take into account the fact that 18 U.S.C.§ 3142 only applies in federal criminal cases, and then only applies to a specific and narrow class of criminal defendants who have been charged with specific crimes which trigger a presumption of danger. Since this argument ignores case law, and conflates statutory law, we will not adopt this suggestion.

First, petitioner has two drug convictions, both of which are more than a decade old, an April 1996 conviction for Conspiracy to Distribute Cocaine for which he received a sentence of 3 years' imprisonment, suspended, 3 years probation; and a June 1998 conviction for Conspiracy to Possess with Intent to Distribute 50 grams or more of "Crack" Cocaine Base for which he received 14 years' imprisonment, and 5 years' supervised release.

Second, respondents suggest that Leslie may have committed this second drug trafficking offense in 1998 at least in part while under court supervision from his first, 1996, drug trafficking conviction.

Third, petitioner has a prior history of substance abuse which dates back to the mid-1990s, approximately fifteen years ago.

Fourth, petitioner was known by one other alias in the 1990's ("Stanford, Leopold"), and also had in the past been identified with two social security numbers.

Fifth, Leslie appears to lack the financial ability to post a meaningful bail since he was subject to a criminal forfeiture; filed a Chapter 7 bankruptcy which included $41,000 in liabilities and $370 in assets; and has one outstanding judgment against him.

In addition, to proffering these factual matters, respondents further contended that in assessing "whether 'the habeas petition raise[s] substantial claims and

19

[whether] extraordinary circumstances exist[ ]'" warranting bail, Mapp v. Reno, 241 F.3d 221, 230 (2d. Cir. 2001), it is unlikely that Leslie will ultimately prevail on the merits of his claim in the immigration proceedings that his conviction under 21 U.S.C. § 846 for conspiracy related to possession with intent to distribute crack cocaine is not an aggravated felony as defined by INA.§§ 101(a)(43)(B) and (U), 8 U.S.C. §§ 1101(a)(43)(B) and (U).  This finding, in turn, according to respondents narrowly limits the circumstances under which Leslie could ultimately prevail in this immigration matter since he will be statutorily ineligible for most forms of immigration relief from removal in that:  (1) petitioner's conviction for a drug-related offense makes him inadmissible pursuant to INA § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II); (2) petitioner would not be eligible for waiver under INA § 212(h), 8U.S.C. § 1182(h) because his conviction is not for marijuana, but for crack cocaine; (3) petitioner would not be eligible for cancellation of removal under INA § 240A, 8 U.S.C. § 1229(b) because his conviction is for an aggravated felony; (4) petitioner would not be eligible for asylum under INA § 208, 8 U.S.C. § 1158 because his conviction is for an aggravated felony; (5) petitioner would not be eligible for withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3) because his conviction is for an aggravated felony with a term of imprisonment over 5 years; (6) petitioner would not be eligible for a waiver of relief under the former INA § 212(c)

because his conviction is for an offense with a term of imprisonment over 5 years.

Rather, respondents argue that the only viable form of relief available to Leslie in the

event of a finding that his drug conviction constitutes an aggravated felony under the

INA would be relief from removal under the Convention Against Torture (CAT).   In

this case, however, respondents contend that Leslie has not requested this relief, and

has stated as recently as his March 22, 2012, hearing before the Immigration Judge

that he has no fear of being removed to Jamaica.

### 2.    The Petitioner's Position

The petitioner, in turn, presented the following evidence which is individualized

and unique as to Leslie and strongly supports his request for bail:

Neville Sylvester Leslie is a 59 year-old Jamaican national, who suffers from

a cascading array of significant physical infirmities, including degenerative spine

disease, gastro-intestinal aliments, and high blood pressure.   Petitioner candidly

acknowledges that fifteen years ago he suffered from a drug dependency which led

him to engage in small scale drug trafficking in part to feed his own addiction. Yet,

while acknowledging these historic realities, Leslie also asserted in a credible fashion

that the passage of time over the past fifteen years, and the vagaries of encroaching

age, have tempered his thoughts, beliefs and conduct.   According to Leslie all he

wishes to do at present is abide by the rules of this country.   Towards that end Leslie

has taken advantage of opportunities in prison, earning a GED, engaging in drug treatment and counseling, and actively seeking out education while incarcerated.

These personal qualities have, in fact been recognized by immigration officials, specifically the IJ who last saw Leslie who expressly found that Leslie "is not a danger to the community.  He has learned his lesson and served considerable time in prison." (Doc. 29)

Moreover, while he is an alien subject to removal from the United States Leslie has substantial familial ties to this country.  These familial ties include Leslie's former spouse, their children and step-children, siblings, and a network of in-laws, all of whom reside in Maryland, Virginia, the District of Columbia and North Carolina. Two of these relatives– Leslie's sister-in-law, Brenda Mitchell, a federal employee who lives in Maryland, and Leslie's step-son, Alvoid Mitchell, a United States Marine who has recently returned from Afghanistan and resides in North Carolina– reportedly stand ready to serve as third-party custodians for Leslie should he be released.

The petitioner further notes that Leslie lacks the financial resources to post a cash bond, a fact conceded by the government, and aptly noted that the imposition of such a bond, knowing that the petitioner cannot post any cash bond, is tantamount to detention.

### 3.   The Petitioner Has Demonstrated Extraordinary Circumstances Justifying Bail Consideration in this Habeas Corpus Proceeding

Having carefully reviewed the parties' written submissions, and examined the evidence presented for our consideration at the March 28, 2012, bail hearing, we make the following individualized determinations in this case:

First, we find as a threshold matter that the petitioner has carried his burden of proving that extraordinary circumstances exist in this case justifying bail consideration as part of the Court's exercise of its habeas corpus jurisdiction.   Indeed, we find numerous extraordinary circumstances are presented in this case.

At the outset, the extent of Leslie's detention without a bail hearing is extraordinary, and encompasses more than 1,400 days.   Second, Leslie's physical health, and the cascading array of medical problems described by this 59 year-old detainee who suffers from coronary, intestinal, neurological and skeletal complaints, presents extraordinary concerns of the type which have in the past justified bail consideration.   See D'Allessandro v. Mukasey, No. 08-914, 2009 WL 799957 (W.D.N.Y. March 25, 2009).   Third, Leslie has identified an extraordinary circumstance for a person who has been imprisoned for the past fourteen years– the petitioner has the on-going support of an extensive, extended family, two of whom stand ready to serve as a third-party custodian for Leslie.

23

Furthermore, we recognize that "a court considering a habeas petitioner's fitness for bail must inquire into whether 'the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective.' Iuteri, 662 F.2d at 161; see also Grune, 913 F.2d at 44." Mapp v. Reno, 241 F.3d 221, 230 (2d. Cir. 2001). With respect to these two questions, we note that respondents have argued that Leslie cannot show extraordinary circumstances because respondents believe that Leslie's immigration proceedings will ultimately fail on their merits. This argument, however, misconstrues what our focus must be in this habeas proceeding. In this proceeding we are not called upon to predict the ultimate outcome of the immigration proceedings. Rather, we are enjoined to simply assess whether "the *habeas petition* raise[s] substantial claims." Id. Thus, "[w]hen other district courts . . . have applied the[ese] standards . . . , "[a]n essential factor ... [has been] the necessity that *the petition present merits that are more than slightly in petitioner's favor*." Richard v. Abrams, 732 F.Supp. 24, 25 (S.D.N.Y.1990) (citing Rado v. Manson, 435 F.Supp. 349, 350-51 (D.Conn.1977) (holding that petitioner must be (1) "an exceptionally strong candidate for bail" and make (2) claims of a "substantial nature upon which [he] has a high probability of success"); Rado v. Meachum, 699 F.Supp. 25, 26-27 (D.Conn.1988) (*holding that the relevant factors are whether (1) "substantial claims" are set forth*

*in the petition; (2) there is a "demonstrated likelihood the petition will prevail";* and (3) there are "extraordinary circumstances" attending the petitioner's situation which would "require" the grant in order to make the writ of habeas corpus "effective," presumably if granted) (citing <u>Stepney v. Lopes</u>, 597 F.Supp. 11, 14 (D.Conn.1984)); <u>accord Harris v. United States</u>, 1997 WL 272398, at *1." <u>D'Alessandro v. Mukasey</u>, 2009 WL 799957 at *3. (Emphasis added)

When we focus on the merits of Leslie's habeas petition, as we are required to do in this setting, we find that Leslie's claims in that petition that he has been subjected to an unreasonably prolonged detention have substantial merit. <u>Leslie v. Attorney General</u>, 2012 WL 898614 at *5. Therefore, Leslie has carried his burden of proof on this element of his bail claim.

We also conclude that Leslie has proven that "'extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective.' <u>Iuteri</u>, 662 F.2d at 161; see also Grune, 913 F.2d at 44." <u>Mapp v. Reno</u>, 241 F.3d 221, 230 (2d Cir. 2001). The relief Leslie seeks from this Court is narrow, specific and precise: he seeks bail while his immigration litigation proceeds. He makes this request because these delays and detention which he has endured to date–which span more than 1,400 days– have been found to be unreasonable. In this setting, where all Leslie seeks is bail consideration in his petition, an individualized assessment of his

suitability for "bail [is absolutely] necessary to make the habeas remedy effective.' " Mapp v. Reno, 241 F.3d 221, 230 (2d. Cir. 2001).  Indeed, adopting any other course in this case  would completely defeat the purpose of the writ.

Finding that the petitioner has carried his threshold burden of demonstrating that extraordinary circumstances exist here which would make bail consideration appropriate in these habeas corpus proceedings, we turn to an individualized consideration of whether "the Government [has borne] the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." Diop v. ICE/Homeland Sec,. 656 F.3d 221, 233 (3d Cir. 2011).  We find that the respondents have not carried their burden in this case.

> **4.**    **The Respondents Have Not Carried Their "burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." Diop v. ICE/Homeland Sec,. 656 F.3d 221, 233 (3d Cir. 2011)**

We find that the respondents have not carried their "burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." Diop v. ICE/Homeland Sec,. 656 F.3d 221, 233 (3d Cir. 2011).  In this regard, we note that the respondents have largely attempted to carry this burden through the presentation of temporally remote information, much of which dates back fifteen years or more. Thus, respondents note that in the 1990's Leslie was convicted of two drug offenses,

had a drug dependency, and used an alias.  However, when considering this dated information, we also find, as the IJ found, that presently Leslie "is not a danger to the community.  He has learned his lesson and served considerable time in prison." (Doc. 29 )   In short, we conclude that the passage of time, the encroachment of the years, and the infirmities of age combine to defeat any claim that Neville Sylvester Leslie is currently a danger to the community.  Therefore, this argument fails.[5]

We further conclude that any risk of flight in this case can be largely mitigated through the imposition of appropriate conditions of release, and do not mandate Leslie's continued detention.  In this regard, we find that Leslie has substantial, extensive family ties to this country, a factor which courts have long recognized strongly militates against a risk of flight. See e.g., United States v. Himler, 797 F.2d 156 (3d Cir. 1986); United States v. Carbone, 793 F.2d 559 (3d Cir. 1986).  Indeed, in this respect we find that the respondents' position, as expressed by the IJ at Leslie's administrative hearing, is both counter-intuitive and flies in the face of case law, which uniformly recognizes family ties as a good thing and not something to be condemned.  Here, the IJ refused to modify Leslie's bail finding that Leslie "does pose

---

[5]We further note that this finding is also based upon our assessment of Leslie's credibility and demeanor, and in this regard our assessment was shared by the IJ who also observed Leslie's credibility and demeanor when he found on March 23, 2012 that the petitioner "is not a danger to the community. He has learned his lesson and served considerable time in prison."(Doc. 29)

some degree of risk of flight." However, in this regard the IJ finding was internally inconsistent, since the IJ supported this risk of flight assessment by evidence which as a matter of law rebuts any flight risk, citing Leslie's "extensive family ties in this country" as a factor which suggested that he would flee. (Id.) We take the opposite view. We consider these strong family ties as ties that likely bind Leslie to abide by bail, as opposed to seeing these ties as a license to flee. Therefore, this aspect of the evidence previously relied upon by respondents actually undermines their flight risk assertions.

Finally, we reject respondents efforts to assert a categorical hurdle to bail by inviting us to treat Leslie's poverty as a meaningless factor in a bail assessment. In this respect, we note that Leslie's poverty after 14 years in prison is undisputed. Furthermore, contrary to respondents' suggestion, in most bail settings we are flatly forbidden from doing what the government invites us to do here; that is, impose "a financial condition that results in the . . . detention of the person." 18 U.S.C. §3142(c)(2). In short, we will not allow Leslie's poverty to be an absolute obstacle to his release, and we conclude that respondents have failed in their burden of proof

both on the issue of risk of flight, and on the related the question of whether Leslie

presents a danger to the community.  Therefore, Leslie is entitled to bail in this case.[6]

### 5.   There Are Conditions of Release Which Will Reasonably Assure Leslie's Appearance at Future Immigration Proceedings

Having made these findings we conclude that there are conditions of release that

will reasonably ensure both the safety of the community, and Leslie's appearance at

future immigration proceedings.  These reasonable, and individually tailored, release

conditions which we find appropriate are as follows:

The petitioner must not violate federal, state, or local law while on release.

The petitioner must advise the Court and immigration officials in writing before

making any change of residence or telephone number.

The petitioner must appear as required and, if ordered removed, must surrender

as directed for removal and deportation.

---

[6]We also find respondents' speculative argument that family members could post the cash bond for Leslie to be unpersuasive. First, this argument still imposes categorical financial barriers to bail, something we are told we should not do. It simply extended those financial hurdles beyond Leslie to his family. This contention also puts the government in the unsavory position of suggesting that family members should ransom a loved one. Further, as a practical matter we do not see how having relatives–whose financial situations are unknown– pool money for a modest bail greatly enhances the likelihood that Leslie would appear. Finally, this argument  ignores the fact that, if family members cannot raise bail, the agency's position becomes tantamount to an order of detention based upon economic status.

The petitioner shall be supervised by immigration authorities while on release, and may be required as part of that supervision to report by telephone daily, and in-person on a weekly basis, to designated immigration authorities.  As part of this supervision, the petitioner may also be required to submit to random drug testing by immigration officials.

The petitioner's travel will be restricted to Pennsylvania, Maryland, Virginia, the District of Columbia and North Carolina, locations where the petitioner has demonstrable family ties.

The petitioner may not possess firearms, destructive devices, dangerous weapons, or possess or use any narcotic controlled substance, unless prescribed by a licensed medical practitioner.

The petitioner will be released to the custody of a third-party custodian, Brenda Mitchell, who must certify that she will ensure the petitioner's compliance with these bail conditions, and immediately report any violation of these conditions.[7]

---

[7]Ms. Mitchell appeared at the bail hearing conducted by this court, and testified under oath acknowledging her willingness to undertake this role, and specifically acknowledging that she was aware that she could be prosecuted herself if she failed to obey the court order by reporting bail violations. Despite the forthright and candid testimony of Ms. Mitchell, respondents opposed her as a third-party custodian, citing two twenty-year old drug convictions on her part. We do not accord the weight to these convictions that the respondents would urge us to find, and do not view them as wholly disqualifying. We reach this conclusion for the following reasons: First, we found this third-party custodian to be candid

While on release, petitioner must reside with the third-party custodian, and must abide by a 9:00 p.m. to 7:00 a.m. curfew, unless given prior permission to deviate from this curfew. Immigration authorities may electronically monitor compliance with this curfew condition.

## IV.  <u>Conclusion</u>

Accordingly, for the foregoing reasons and in accordance with the mandate of the United States Court of Appeals for the Third Circuit, having conducted an "individualized bond hearing as required by <u>Diop</u> within ten days of the date when the

---

and honest, and note that she fully acknowledged these decades' old convictions. Second, we note that it is undisputed that two agencies of the United States Government, the National Institute of Health and the U.S. Small Business Administration, have not found these remote convictions to be matters that undermine their faith in Ms. Mitchell, since she has been employed by both of these agencies. Furthermore, we observe that federal law would caution against placing great weight on decades-old convictions, and typically would exclude them from evidence. <u>See</u> Fed. R. Evid. 609 (ten-year limitation on use of conviction to impeach). Moreover, in assessing the suitability of any third party custodian we are more persuaded by where the custodian is now, rather than being influenced adversely by where they have been in the past. Ms. Mitchell is currently a federal employee, who is raising a daughter due to graduate from a community college. She has a responsible job, and was a witness and custodian whose demeanor and manner of expression left the Court convinced that she both understood, and was prepared to perform, the duties of a third-party custodian. Finally, we note that the other bail conditions which we set further serve to mitigate any concerns that may stem from the designation of Ms. Mitchell as a third-party custodian. Yet, while we find Ms. Mitchell to be a satisfactory third-party custodian, upon request of the respondents, we will be pleased to entertain other potential third-party custodians, who may be even more suitable. We are not, however, prepared to deny Leslie's release on this ground.

31

[court of appeals'] opinion and order [we]re filed," <u>Leslie v. Attorney General</u>, 2012

WL 898614 at *5, the petitioner IS ORDERED released on conditions.

    An appropriate order shall issue.

***<u>S/Martin C. Carlson</u>***
Martin C. Carlson
United States Magistrate Judge

March 29, 2012